## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRANT MEDICAL CENTER<br>111 South Grant Avenue<br>Columbus, OH 43215<br><br>RIVERSIDE METHODIST HOSPITAL<br>3535 Olentangy River Road<br>Columbus, OH 43215<br><br>DOCTOR'S HOSPITAL<br>5100 West Broad Street<br>Columbus, OH 43228<br><br>WESTERN RESERVE CARE SYSTEM<br>500 Gypsy Lane<br>Youngstown, OH 44501<br><br>ST. ELIZABETH HEALTH CENTER<br>1044 Belmont Avenue<br>Youngstown, OH 44504<br><br>ST. JOSEPH HEALTH CENTER<br>667 Eastland Avenue SE<br>Warren, OH 44484<br><br>KETTERING MEMORIAL HOSPITAL<br>3533 Southern Boulevard, Suite 2250<br>Kettering, OH 45429<br><br>GRANDVIEW MEDICAL CENTER<br>405 West Grand Avenue<br>Dayton, OH 45405<br><br>SUMMA HEALTH SYSTEM<br>525 East Market Street<br>Akron, OH 44304 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

SYCAMORE HOSPITAL                              )
2150 Leiter Road                               )
Miamisburg, OH  45342,                         )
                                               )
      Plaintiffs,                          )
                                               )
    v.                                       )
                                               )
SYLVIA MATHEWS BURWELL,                        )
Secretary United States Department of          )
Health and Human Services,                     )
200 Independence Avenue, S.W.                  )
Washington, D.C. 20201,                        )
                                               )
      Defendant.                           )

## COMPLAINT FOR JUDICIAL REVIEW AND SUMS DUE UNDER THE MEDICARE ACT

### Nature of Action

1.    This is a civil action arising under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare Act"), under the Administrative Procedure Act, 5 U.S.C. §§ 551-559 and 701-706 (the "APA"), and under the Fifth Amendment to the Constitution of the United States.

2.    This action seeks judicial review of a final decision rendered by the Administrator of the Centers for Medicare and Medicaid Services ("CMS" or "Administrator"), designated by the Secretary of the United States Department of Health and Human Services ("HHS") to administer the Medicare Program (42 U.S.C. Section 1395, *et seq.*).  Specifically, this action seeks reversal of the decision of the Provider Reimbursement Review Board (the "Board") which the Administrator declined to review during a sixty-day review period permitted under 42 U.S.C. § 1395oo(f)(1).  The Board's decision constitutes a final appealable administrative decision of the Secretary.  A true and accurate copy of the Board's final decision is attached hereto as Exhibit 1.

**Jurisdiction and Venue**

1.     This Court has jurisdiction over this action pursuant to 42 U.S.C. § 1395oo(f)(1),

5 U.S.C. § 704, and 28 U.S.C. § 1331.

2.     The plaintiffs have exhausted all administrative remedies under federal law.

3.     Venue is proper in this district according to 42 U.S.C. § 1395oo(f)(1).

**Parties**

4.     The plaintiffs in this action are the following acute care general hospitals (the

"Hospitals") located in Ohio:

      a.   Grant Medical Center

      b.   Riverside Methodist Hospital

      c.   Doctor's Hospital

      d.   Western Reserve Care System

      e.   St. Elizabeth Health Center

      f.   St. Joseph Health Center

      g.   Kettering Memorial Hospital

      h.   Grandview Medical Center

      i.   Summa Health System

      j.   Sycamore Hospital

5.     At all times relevant herein, each one of the Hospitals operated a "hospital" as

defined in 42 U.S.C. § 1395x(e) and was a "provider of services" participating in the Medicare

Program within the meaning of 42 U.S.C. § 1395x(u).

6.     Defendant Sylvia Mathews Burwell (the "Secretary") is the Secretary of HHS.

7.      The Administrator acted on behalf of the Secretary when it declined review of the Board decision for which the Hospitals are seeking this judicial review.

### Applicable Law

8.      The Medicare Act establishes a system of health insurance for most persons over 65 years of age and to certain disabled persons (the "Medicare Program" or the "Program"). Pursuant to this Program, Medicare pays for specific medical services rendered by hospitals participating as providers in the Program, such as the Hospitals.

9.      One part of the process for hospitals to obtain Medicare reimbursement is the hospital's annual report of costs.  Each hospital participating in the Medicare Program is required to file a cost report at the close of each fiscal year detailing the various costs incurred by the hospital and apportioning such costs to Medicare beneficiaries.

10.     The cost reporting period (or fiscal year) for the Hospitals begins on either January 1 or July 1 and ends on either December 31 or June 30, depending on the Hospital.

11.     After a Medicare hospital files its cost report, the amount of reimbursement to which the hospital is entitled is determined by a regional contractor currently known as a "Medicare Administrative Contractor" or "MAC" acting as an agent of the Secretary.  During the cost reporting periods relevant to this complaint a MAC was referred to as a "fiscal intermediary".

12.     The fiscal intermediary responsible for reviewing the Hospitals' Medicare cost reports is currently CGS Administrators, LLC.  Previous fiscal intermediaries involved in the review of the Hospitals' Medicare cost reports were National Government Services, Inc. and AdminiStar Federal.  For purposes of this Complaint, all MACs and fiscal intermediaries will be referenced as the "Intermediary."

13.     Upon receiving a hospital's cost report, the Intermediary performs an audit to determine the amount of Medicare Program reimbursement due to the provider based upon the detailed payment regulations promulgated by the Secretary.   In addition to the Secretary's regulations, the Intermediary makes its determinations based on other forms of guidance, such as manuals, Medicare Program memoranda, rulings, and transmittals.

14.     The Intermediary communicates its decision to a provider, as required by 42 C.F.R. § 405.1803, by issuing a "Notice of Program Reimbursement" (or "NPR"). The NPR sets forth the net amount due the provider or due to the Medicare Program based on the Intermediary's reconciliation of reasonable cost reimbursement, interim payments made to the provider during the provider's cost reporting period, and year-end adjustments made by the Intermediary during the audit.

15.     One element of Medicare reimbursement that the NPR addresses involves payments made to hospitals to support the indirect costs incurred as a result of teaching and training physicians through the operation of a graduate medical education program.   Section 1886(d)(5)(B) of the Social Security Act (codified at 42 U.S.C. §1395ww(d)(5)(B)) provides that teaching hospitals subject to the prospective payment system receive an additional payment for the indirect costs of medical education, referred to as "indirect medical education" or "IME" reimbursement.

16.     The IME reimbursement amount is determined by a formula set forth at 42 C.F.R. 412.105, which is based in part upon a hospital's ratio of the number of intern and resident full-time equivalents ("FTEs") participating in a hospital's graduate medical education program to the number of available beds in the hospital.   The IME reimbursement formula is such that the greater the number of available beds in a hospital, the lesser the IME reimbursement.

17.     Another element of Medicare reimbursement that the NPR addresses involves payments made to hospitals that treat a disproportionate share of low-income patients. Section 1886(d)(5)(F)(i) of the Social Security Act (codified at 42 U.S.C. §1395ww(d)(5)(F)(i)) provides that a hospital must meet certain criteria concerning its location and bed size in order to be eligible for an additional payment, referred to as a "disproportionate share hospital" or "DSH" payment adjustment.

18.     For hospitals with 100 or more beds and located in urban areas, 15% of their patients must be low-income in order for these hospitals to be eligible for the DSH adjustment, while 40% of the patients must be low-income for an urban hospital with fewer than 100 beds to qualify. Thus, for hospitals in urban areas, the DSH adjustment criteria are such that the greater the number of available beds in a hospital, the easier it is for a hospital to qualify for the DSH payment adjustment.

19.     All of the adjustments at issue in this action pertain to application of the two regulations governing bed day counts for the IME reimbursement and the DSH payment adjustment prior to October 1, 2003, including 42 C.F.R. § 412.105(b) (the "IME regulation") and 42 C.F.R. § 412.106(a)(1)(ii) (the "DSH regulation"). Specifically, the issue in dispute is whether "observation bed days" and "swing bed days" are included in the definition of "beds" set forth at 42 C.F.R. § 412.105(b) and 42 C.F.R. 412.106(a)(i) for the fiscal years at issue for the Hospitals.

20.     "Swing beds" are acute care beds that can be used to provide post-hospital skilled nursing facility care on a temporary basis. "Observation beds" are beds used to observe patients to determine whether those patients should be admitted to the hospital.

21.     The Secretary's longstanding policy has been that observation bed days and swing bed days are excluded from the counts of available bed days and patient days at 42 C.F.R. §§ 412.105(b) and 412.106(a)(1)(ii) (the "Policy Position").

22.     Prior to October 1, 2003, 42 C.F.R. § 412.105(b) governing the IME bed day count provided that:

> [T]he number of beds available in a hospital is determined by counting the number of available bed days during the cost reporting period, not including beds or bassinets in the newborn nursery, custodial care beds or beds in excluded distinct part hospital units, and dividing that number by the number of days in the cost reporting period.

23.     Prior to October 1, 2003, 42 C.F.R. § 412.106(a)(i) governing the DSH bed day count provided that "[t]he number of beds in a hospital is determined in accordance with § 412.105(b)."

24.     In litigation spanning between 1999 and 2002, two hospitals located within the geographic boundaries of the United States Court of Appeals for the Sixth Circuit successfully challenged the Secretary's longstanding Policy Position as applied to those hospitals with respect to the DSH adjustment, arguing that swing and observation beds should be included in and considered available beds for purposes of the DSH adjustment, thereby making it easier for those providers to meet the 100 bed eligibility threshold.

25.     On December 11, 2002, the United States Court of Appeals for the Sixth Circuit issued its decision in *Clark Regional Med. Ctr. v. United States Dep't of Health and Human Serv's*, 314 F.3d 241, 249 (6th Cir. 2002), disagreeing with the Policy Position and holding that swing bed days and observation days should be included in the bed count for purposes of the appealing hospitals' DSH eligibility determination.

26.     Citing the decision in *Clark* as an application of CMS rules "that is inconsistent with our current policy position and that would result in inconsistent treatment of beds, patient days and costs" (68 *Federal Register* at 45416), on August 1, 2003, the Secretary clarified its longstanding Policy Position by publishing a final rule and clarifying amendment to the IME regulation, 42 C.F.R. § 412.105(b).    Effective October 1, 2003, CMS made explicit the Secretary's longstanding policy of excluding "[b]eds otherwise countable under this section used for outpatient observation services, [and] skilled nursing swing-bed services...."

27.     The DSH regulation continued to provide that "[t]he number of beds in a hospital is determined in accordance with § 412.105(b)," thereby incorporating the IME clarification, and also was further clarified by amendment to 42 C.F.R. § 412.106(a)(ii) concerning patient days to make explicit the Secretary's longstanding policy of excluding "patient days associated with -- * * * (B) Beds otherwise countable under this section used for outpatient observation services, or skilled nursing swing-bed services...."

28.     Though the decision in *Clark* was limited to the two hospital parties and notwithstanding its August 1, 2003 rule-making and preamble discussion, on August 25, 2004, the Secretary issued Joint Signature Memorandum 109 ("JSM-109") to four Intermediary representatives.  A true and accurate copy of JSM-109 is attached to this Complaint as Exhibit 2.

29.     JSM-109 states that it was issued to "clarif[y] how the Sixth Circuit Court of Appeals decision in *Clark* [ ], will affect the counts of beds and patient days on the Medicare cost report for hospitals located within the Sixth Circuit."

30.     Specifically, JSM-109 stated and instructed as follows:

      a.   It reiterated the Secretary's longstanding Policy Position of excluding observation and swing-beds from the IME and DSH bed counts;

b. It specified, however, that the *Clark* decision and JSM-109 would apply "only to hospitals located within the Sixth Circuit (Michigan, Ohio, Kentucky, and Tennessee)";

c. It further limited its application to Sixth Circuit hospitals "for discharges occurring before October 1, 2003";

d. It indicated that JSM-109 and *Clark* "have no bearing on hospitals located elsewhere [outside the geographical boundaries of the Sixth Circuit]" and instructed that the longstanding Policy Position continue to be applied to all hospitals outside the Sixth Circuit;

e. It noted that the longstanding Policy Position was "clarified...in the August 1, 2003, Final Rule (68 FR 45419), which took effect October 1, 2003";

f. It instructed intermediaries to *include* observation and swing beds in the count of available bed days for IME and DSH purposes (as well as for patient day counts for DSH purposes) for discharges prior to October 1, 2003 for Sixth Circuit hospitals; and

g. It limited its application to cost reports for which no initial NPR had yet been issued or cost reports concerning which a jurisdictionally proper appeal was pending and had raised the observation or swing-bed issue.

### Facts and Procedural History

31.   The plaintiff Hospitals are all located within the geographic boundaries of the Sixth Circuit.

32.     CMS' fiscal intermediaries consistently applied the longstanding Policy Position to applicable cost reports of providers located outside of the geographic boundaries of the Sixth Circuit.

33.     For discharges occurring on and after October 1, 2003, CMS' fiscal intermediaries treated observation and swing bed days in accordance with 42 C.F.R. §§ 412.105(b) (2003) and 412.106(a)(1)(ii) (2003) and as discussed in 68 Fed. Reg. 45346, 45,415-45,422 (Aug. 1, 2003).

34.     Each of the Hospitals received adjustments to its Medicare reimbursement based on the application of JSM-109.

35.     Specifically, the application of JSM-109 impacted the following total adjustment amounts of the Hospitals under IME and DSH, respectively, for the fiscal years indicated, although the precise impact on each total adjustment amount is not known at this time:

**FY 2002**

    a.   Doctor's Hospital - $273,472 (IME) and $166,487 (DSH)

    b.   Grant Medical Center - $578,651 (IME) and $36,648 (DSH)

    c.   Riverside Methodist Hospital - $262,004 (IME)

    d.   Western Reserve Care System - $48,660 (DSH)

    e.   St. Elizabeth Heath Center - $107,216 (IME)

    f.   St. Joseph Health Center - $16,882 (IME)

    g.   Kettering Memorial Hospital - $214,546 (IME)

    h.   Grandview Medical Center - $129,051 (IME)

**FY 2003**

    a.   Grant Medical Center - $350,595 (IME) and $3,118 (DSH)

    b.   Riverside Methodist Hospital - $307,976 (IME)

    c.   Western Reserve Care System - $141,974 (IME) and $36,213 (DSH)

    d.   Summa Health System - $345,005 (DSH)

    e.   Grandview Hospital - $150,000 (IME) and $126,322 (DSH)

    f.   Sycamore Hospital - $73,000 (IME)

    g.   St. Elizabeth Health Center - $124,820 (IME) and $5,455 (DSH)

**FY 2004**

    a.   Grant Medical Center - $184,010 (DSH)

    b.   Riverside Methodist Hospital - $428,236 (DSH and IME)

    c.   Kettering Memorial Hospital - $54,514 (IME)

    d.   Sycamore Hospital - $52,992 (IME)

    e.   Summa Health System - $98,298 (IME) and $269,057 (DSH)

    f.   Grandview Hospital - $263,087 (IME) and $168,987 (DSH)

36.     A hospital may appeal the Intermediary's determination of Medicare Program reimbursement (*i.e.*, the NPR) to the Board pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835.

37.     The plaintiff Hospitals timely filed appeals relating to available bed days that affected the foregoing DSH and IME adjustment payments from fiscal years ending from 2002 through 2004, which appeals were subsequently consolidated before the Board into eight group appeals.

38.     The amount in controversy exceeded $50,000 for each group appeal.

39.     The Board held a record hearing on all of the consolidated group appeals, and on January 29, 2015 rendered a single decision as to all of the appeals, finding that "the

Intermediary was bound by the U.S. Court of Appeals for the Sixth Circuit *Clark* decision" and that as a result, "[t]he Intermediary's adjustment to include outpatient observation bed days and swing bed days in the bed count for purposes of calculating the Providers' [IME and DSH] reimbursement was proper."

40.     The plaintiff Hospitals received notice of the Board decision on February 2, 2015, which the Administrator declined to review.

**Count I: Claim under 5 U.S.C. § 706 for**
**Reversal of the Board Decision**

41.     The Hospitals hereby incorporate the allegations set forth in paragraphs 1 through 40 above as if fully rewritten herein.

42.     The decision of the Board is in error and has wrongly denied the Hospitals the Medicare reimbursement to which they are entitled.

43.     As a result, the Administrator's action and/or inaction resulting in the adoption of the Board decision as the final decision of the Secretary pursuant to 42 U.S.C. § 1395oo(f)(1) is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law, and therefore should be set aside.

44.     Specifically, application of JSM-109 is contrary to the plain meaning of the August 1, 2003 amendments to 42 C.F.R. 412.105(b), which constitute clarifying amendments with retroactive effect requiring the exclusion of observation and swing beds from the IME and DSH adjustment calculations for the Hospitals' cost reporting years 2002-2004.

45.     In addition, even if the clarifying amendments are not given retroactive effect as they should be, because the Secretary is not legally obligated to follow *Clark*, even with respect

to providers within the geographical boundaries of the Sixth Circuit. JSM-109 and the Secretary's decision to treat the plaintiff Hospitals differently from similarly situated providers outside of the Sixth Circuit is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law.

**Count II: Claim under the Fifth Amendment
to the United States Constitution for Reversal of the Board Decision**

46.     The Hospitals hereby incorporate the allegations set forth in paragraphs 1 through 45 above as if fully rewritten herein.

47.     Because *Clark* is not legally binding on the Secretary, even as to hospitals within the Sixth Circuit, the Secretary's decision upholding application of JSM-109 and her decision to treat the plaintiff Hospitals differently from similarly situated providers outside of the Sixth Circuit lacks any rational basis and therefore constitutes a violation of the Hospitals' rights to the equal protection of the laws under the due process clause of the Fifth Amendment to the United States Constitution.

48.     In addition, the Secretary's intra-circuit acquiescence to the *Clark* decision uniquely deprives the Hospitals and all hospitals within the Sixth Circuit of their statutory right to a meaningful venue choice for obtaining judicial review under 42 U.S.C. 1395oo(f)(1) on the issue of observation and swing bed days, which is also in violation of the equal protection and due process guarantees of the Fifth Amendment to the United States Constitution.

## Request for Relief

WHEREFORE, the Hospitals respectfully request the following relief from this Court:

A.     That the Court hold unlawful and set aside the Secretary's actions as being arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law;

B.     That the Court declare that the Secretary's actions are in violation of the Hospitals' due process and/or equal protection rights under the Fifth Amendment to the United States Constitution;

C.     That the Court hold in favor of the Hospitals as to all issues presented;

D.     That the Court order the Secretary to pay the Hospitals interest on the revised adjustment amounts resulting from the Court's order pursuant to 42 U.S.C. § 1395oo(f);

E.     That the Court remand this case to the Secretary and order that Medicare reimbursement payable to the Hospitals be promptly calculated and paid in accordance with the Court order;

F.     That the Court order the Secretary to pay to the Hospitals' reasonable attorney's fees and costs required under the Equal Access to Justice Act, 28 U.S.C. § 2412(d); and

G.     That the Court order such other and further relief as the Court may deem just and proper.

Respectfully submitted,

James F. Flynn
     USDC D.C. Bar No. OH0030
     Ohio Bar No. 0046802
Daniel C. Gibson
     USDC D.C. Bar No. OH0029
     Ohio Bar No. 0080129
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215
(614) 227-2300 (phone)
(614) 227-2390 (fax)
Counsel for Plaintiffs

Dated:  April 3, 2015